# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL MCINERNEY,

    Petitioner,

vs.

DONALD HELLING, et al.,

    Respondents.

Case No. 3:07-CV-00037-LRH-(RAM)

ORDER

    Before the Court are the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#8), Respondents' Answer (#30), and Petitioner's Response (#33). The Court finds that Petitioner is not entitled to relief and denies the Petition (#8).

    The facts leading to the charges against Petitioner are not in dispute. Petitioner attacked Edwin Hickman, an 81-year old man. Petitioner grabbed Hickman's walking stick and then beat Hickman with it. Petitioner broke the stick in the process.

    Petitioner's counsel, Bryan Cox, determined upon meeting Petitioner that he might be incompetent, and he had Petitioner tested by a couple of psychologists. Ex. D (#31-4, p. 5).[1] The Eighth Judicial District Court of the State of Nevada determined that Petitioner was incompetent and committed him to Lakes Crossing for treatment. Ex. F (#31-5, p. 1). After about six months' treatment, the court then found Petitioner to be competent. Ex. H (#31-5, p. 19).

---

[1] Page numbers in parentheses refer to the Court's computer images of the documents.

After a jury trial, Petitioner was convicted of robbery with the victim 65 years of age or older and attempted murder with the use of a deadly weapon and the victim 65 years of age or older. Ex. U (#32-3, p. 1). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. Y (#32-6, p. 1).

Petitioner then filed in state court a pro se post-conviction petition for a writ of habeas corpus and a couple of supplements. Ex. Z (#32-6, p. 7), CC (#32-10, p. 10), EE (#32-11, p. 8). Attorney JoNell Thomas then began to represent Petitioner pro bono, and she filed a supplemental petition. Petition, Ex. A (#8-2). After a hearing, the district court overturned the attempted murder conviction because an instruction on voluntary intoxication impermissibly shifted the burden of proof to Petitioner; the district court denied the other grounds and the robbery conviction remained. Ex. OO (#32-17, p. 1), PP (#32-17, p. 14). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. CCC (#32-25, p. 13).

At the state habeas corpus hearing, the district court noted that the sentence for the robbery conviction appeared to be illegal. Ex. OO, pp. 10-11 (#32-17, pp. 11-12). The trial judge, who was not the same person that presided over the habeas corpus proceedings, had sentenced Petitioner to prison for a minimum term of 35 months and a maximum term of 156 months. Ex. U, p. 2 (#32-3, p. 3). That sentence fit within the allowable range for robbery. Nev. Rev. Stat. § 200.380(2). It also complied with the requirement that a minimum term may not exceed 40% of the maximum term. Nev. Rev. Stat. § 193.130(1). However, it did not comply with the then-existing law that the court must impose an equal and consecutive sentence when the victim is 65 years of age or older. Nev. Rev. Stat. § 193.167(1) (2001). The state filed a motion to correct the illegal sentence. Ex. SS (#32-20, p. 1). See also Nev. Rev. Stat. § 176.555. After a hearing, the court corrected the sentence by imposing an equal and consecutive minimum term of 35 months and maximum term of 156 months. Ex. XX (#32-21, p. 13). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. DDD (#32-26, p. 1).

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28

U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> When it comes to state-court factual findings, [the Antiterrorism and Effective Death Penalty Act] has two separate provisions. First, section 2254(d)(2) authorizes federal courts to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable. Second, section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence."
>
> We interpret these provisions sensibly, faithful to their text and consistent with the maxim that we must construe statutory language so as to avoid contradiction or redundancy. The first provision—the "unreasonable determination" clause—applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, that the process employed by the state

> court is defective, or that no finding was made by the state court at all. What the "unreasonable determination" clause teaches us is that, in conducting this kind of intrinsic review of a state court's processes, we must be particularly deferential to our state-court colleagues. For example, in concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. Similarly, before we can determine that the state-court factfinding process is defective in some material way, or perhaps non-existent, we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.

Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed, 545 U.S. 1165 (2005).

Grounds 1, 2, and 3 are claims that Petitioner's trial counsel was ineffective. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

-4-

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In Ground 1, Petitioner alleges that he was not competent at trial because, after he returned from Lakes Crossing, medical staff at the jail altered his prescribed medications. He also claims that counsel was ineffective for failing to move for another determination of competency. On this issue, the Nevada Supreme Court held:

> First, McInerney argues that trial counsel was ineffective for failing to investigate whether McInerney was competent at the time of trial. While acknowledging that he was previously deemed competent to stand trial, McInerney argues that subsequent changes in the dosages and types of his prescription medications "rendered the previous findings of competency unreliable and meaningless." The district court found that an investigation into McInerney's mental health status was not warranted because there was no reason to believe that he was incompetent at the time his trial commenced. The district court's finding is supported by substantial evidence.

> There is no evidence in the record that reasonable doubt as to McInerney's competency at the time of trial. Approximately two months before trial, McInerney had been deemed legally competent. Additionally, the district court noted that McInerney appeared fully cognizant during trial, and the record of the trial indicates that he was able to appropriately respond to the trial judge's questions. Finally, McInerney's written request to prison officials dated December 1, 2003, approximately one week before trial, and the medical notes from a prison doctor dated November 5, 2003, approximately one month before trial, indicate that McInerney was coherent and oriented as to person, time, and place. Accordingly, trial counsel was not deficient for failing to investigate McInerney's competency before commencement of the trial.

Ex. CCC, pp. 2-3 (#32-25, pp. 16-17) (citing, among other cases, Melchor-Gloria v. State, 660 P.2d 109 (Nev. 1983). The rule in Melchor-Gloria is that a trial court must order a competency hearing when there is substantial evidence raising a reasonable doubt about the defendant's competence to stand trial. That is the same rule that the Supreme Court of the United States developed in Drope v. Missouri, 420 U.S. 162 (1975). Petitioner argues that he had been found to be incompetent, but that ignores the subsequent finding that he was competent. Petitioner also argues that the information from the prison doctor, his request at the jail, and the questions of the trial judge did not establish that he was competent. Arguments that the record is silent do not prove that the court should have ordered a test of Petitioner's competence; they prove that no evidence was before the trial court or counsel that would have led them to conclude that a test of Petitioner's competence was needed. Petitioner also argues that the Nevada Supreme Court's ruling that the district court noted that he had appeared cognizant during trial was unreasonable because the habeas corpus judge was different from the trial judge. The habeas corpus ruling from the district court was more clear: Nothing in the record indicated that the trial judge had any reason to doubt Petitioner's competence. Ex. PP, p. 6 (#32-17, p. 21). The habeas corpus judge was not pretending to have a personal recollection of the trial; he simply was reviewing the record. The Nevada Supreme Court reasonably applied Drope and Strickland. 28 U.S.C. § 2254(d)(1).

In Ground 2, Petitioner claims that trial counsel provided ineffective assistance because counsel did not investigate Petitioner's mental health and psychiatric history in relation to his mental state at the time he attacked Hickman. In other words, Petitioner argues that trial counsel should have presented an insanity defense, because if the jury found that he was insane, then he would have been acquitted of all charges. Instead, counsel presented an intoxication defense, based

upon Petitioner's consumption of alcohol and methamphetamine before his attack on Hickman. Intoxication is a defense to specific-intent crimes like attempted murder, but it is not a defense to general-intent crimes like robbery. Counsel's strategy ultimately was successful. Although Petitioner was found guilty of attempted murder, that verdict resulted from an instruction that shifted the burden of proof such that Petitioner had to prove by a preponderance of the evidence that he could not form the specific intent to kill Hickman. The Nevada Supreme Court had held that that instruction was unconstitutional. Garner v. State, 6 P.3d 1013 (Nev. 2000). The state district court overturned that verdict in the habeas corpus proceedings.

On this issue, the Nevada Supreme Court held:

> Third, McInerney argues that trial counsel was ineffective for failing to investigate McInerney's mental health history. Specifically, he argues that "[t]rial counsel could not make a reasonable tactical decision as to whether to pursue an insanity defense without having first conducted a reasonable investigation." The district court rejected McInerney's claim, finding that the defense theory of methamphetamine-induced psychosis was reasonable and substantiated by McInerney's medical records. We conclude the district court's finding is supported by substantial evidence.
>
> In particular, we note that McInerney's medical records do not show that he has ever been formerly diagnosed with schizophrenia and instead indicated a long term history of depression and drug addiction. Moreover, McInerney did not demonstrate that, during the commission of the crime, he was "in a delusional state such that he [could not] know or understand the nature and capacity of his act, or his delusion [was] such that he [could not] appreciate the wrongfulness of his act." To the contrary, trial testimony indicated that McInerney lied to police officers about the source of the blood on his leg and changed clothes and showered purportedly to destroy the blood evidence. Accordingly, trial counsel was not deficient for failing to present an insanity defense.

Ex. CCC, pp. 5-6 (#32-25, pp. 19-20) (quoting Finger v. State, 27 P.3d 66 (Nev. 2001)). A review of the documents that Petitioner presented in his supplemental state petition, attached as Exhibit A to his Petition (#8), and that Petitioner presented in his Response (#33), show that the Nevada Supreme Court's determination that Petitioner formerly had not been diagnosed as schizophrenic is reasonable. The only document before the attack on Hickman that suggests schizophrenia is from the Social Security Administration on disability benefits. The documents from the Mohave County, Arizona, mental health office are far more extensive and, just as the Nevada Supreme Court characterized them, state that Petitioner had problems with depression and drug addiction.

Counsel had a choice, and each alternative had its costs and benefits for Petitioner. Counsel could pursue an intoxication defense, which if successful would nullify the specific intent required for the attempted murder charge but do nothing for the robbery charge. Counsel had plenty of evidence that Petitioner was intoxicated with alcohol and methamphetamine when Petitioner attacked Hickman. On the other hand, counsel could pursue an insanity defense, which if successful would result in an acquittal of all charges. Insanity is not an easy defense to establish, as described by the Nevada Supreme Court above. Counsel would have needed to establish that Petitioner did not know that he was attacking and beating with his own cane an 81-year-old man, or that Petitioner did not know that such an attack was wrong. For that, counsel had a letter from the Social Security Administration, a subsequent diagnosis of possible schizophrenia, and testimony of Petitioner's bizarre behavior at the attack, which could also be explained by his intoxication. If Petitioner testified, then counsel would have needed to contend with Petitioner's criminal record, which was extensive enough for the prosecution to seek adjudication of Petitioner as a habitual criminal. Under these circumstances, the Nevada Supreme Court's determination that counsel was not ineffective was a reasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

Ground 3 is a claim that counsel should have objected to the introduction of preliminary hearing testimony at trial. Hickman testified at the preliminary hearing. He died before trial, and the trial court admitted into evidence his testimony at the preliminary hearing. The Sixth Amendment requires that when the state seeks to introduce testimonial statements given out of court, the declarant must be unavailable to testify and a prior opportunity for cross-examination must have existed. Crawford v. Washington, 541 U.S. 36 (2004). Crawford left open the definition of "testimonial," but prior testimony at a preliminary hearing, prior testimony before a grand jury, and statements given to police at interrogations are testimonial. 541 U.S. at 68. The Supreme Court of the United States decided Crawford on March 8, 2004. Crawford applies to petitioner's case because the Nevada Supreme Court did not decide his direct appeal until December 2, 2004. Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 94-99 (1993). The Nevada Supreme Court used the reliability analysis of Ohio v. Roberts, 448 U.S. 56 (1980). However, Crawford abrogated that analysis.

Based upon <u>Crawford</u>, this ground is without merit. Hickman's declaration was testimonial, because he gave it at the preliminary hearing. Not only was Hickman's declaration subject to cross-examination, counsel did cross-examine Hickman. Ex. B, pp. 9-10 (#31-3, p. 6). Based on those facts, the lack of objection to the introduction of Hickman's preliminary hearing testimony at trial was not ineffective assistance of counsel.

Ground 4 is a claim that the correction of Petitioner's sentence for robbery with the victim 65 years of age or older violated the Double Jeopardy Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. To repeat, the sentence of a minimum term of 35 months and a maximum term of 156 months was illegal because the trial court did not include an equal and consecutive sentence for the age of the victim. On this issue, the Nevada Supreme Court held:

> McInerney argues that the district court erred by adding a 35 to 156 month prison term for the elderly victim enhancement. Specifically, McInerney argues that the increase in the severity of his sentence violated the Double Jeopardy Clauses of the United States and Nevada Constitutions because he had a reasonable expectation that the sentence was final. Citing to <u>Miranda v. State</u>, McInerney argues that the illegal sentence could have been corrected by less severe means, namely, by reducing the prison term imposed for the robbery count to 24 to 60 months and then adding an equal and consecutive prison term of 24 to 60 months for the elderly victim enhancement. We disagree.
>
> The "correction of an illegally imposed sentence does not necessarily violate double jeopardy simply because the correction increases the punishment." However, to comply with double jeopardy principles, a district court may correct an illegal sentence by increasing its severity only when there is no other, less severe means of bringing the sentence into compliance with the pertinent statute.
>
> The district court did not err by imposing a consecutive prison term of 35 to 156 months for the elderly victim enhancement because there was no less severe means of correcting the illegal sentence. NRS 193.167(1) mandates that the sentencing court impose a prison term for the commission of a crime against an elderly victim that is "equal to and in addition to the term of imprisonment prescribed by statute" for the primary offense. In this case, the sentence imposed for the primary robbery offense was 35 to 156 months and, pursuant to NRS 193.167(1), an additional consecutive sentence of 35 to 156 month was required. Accordingly, McInerney's double jeopardy rights were not violated.
>
> Citing to <u>Dewitt [sic] v. Ventetoulo</u>, McInerney argues that the correction of his sentence is so unfair as to violate due process. Specifically, McInerney notes that the illegal sentence was not corrected until two years after the initial sentence was imposed, and McInerney was eligible for parole on the robbery charge before the sentence was corrected. We conclude that the district court did not err by rejecting McInerney's argument. We note that, unlike in <u>DeWitt</u>, the State sought to correct the sentencing error within a reasonable time after its discovery, and McInerney was

-9-

still incarcerated at the time the error was discovered.  Accordingly, McInerney's due process rights were not violated.

Ex. DDD, pp. 2-3 (#32-26, pp. 4-5) (citing Miranda v. State, 956 P.2d 1377 (Nev. 1998), DeWitt v. Ventetoulo, 6 F.3d 32 (1st Cir. 1993)).  Miranda, the case upon which the Nevada Supreme Court relied for the double jeopardy question, had separate analyses for the Fifth Amendment and for the Nevada Constitution's protection against double jeopardy.  Miranda concluded that the Fifth Amendment afforded no relief, but that the Nevada Constitution did require relief.  956 P.2d at 1377.  In its decision on the current case, the Nevada Supreme Court did not analyze separately the issues of federal law and state law.  This Court is concerned only with the Fifth Amendment.  See 28 U.S.C. § 2254(a).  The correction of an illegal sentence does not violate the Fifth Amendment's double jeopardy clause, even when the correction increases the sentence.  Bozza v. United States, 330 U.S. 160, 166-67 (1947).  The Nevada Supreme Court's decision in this case was a reasonable application of Bozza.  28 U.S.C. § 2254(d)(1).

Petitioner's due process claim in Ground 4 also lacks merit.  In the case upon which he relies, DeWitt, the Superior Court of Rhode Island illegally granted DeWitt relief from a life sentence and then reimposed the life sentence several years later, after DeWitt had been released from custody.  The question relevant to Petitioner's case was whether due process allowed the superior court to reimpose DeWitt's life sentence.[2]  6 F.3d at 34.  The Court of Appeals for the First Circuit held DeWitt's life sentence could not be reimposed.  However, DeWitt acknowledged that other courts, including the Supreme Court of the United States, had ruled that the Constitution does not prohibit corrections of illegal sentences that result in an increase in time spent in prison.  6 F.3d at 34 & n.2.  Because the Supreme Court has not ruled on this question, the Nevada Supreme Court's decision could not be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and this Court cannot grant Petitioner relief on this issue.  28 U.S.C. § 2254(d)(1).

---

[2] A due-process question on parole revocation was also present in DeWitt, but that issue is not relevant to Petitioner's case.

1       IT IS THEREFORE ORDERED that Petitioner's motions for status check (#34, #35, #36) are **DENIED** as moot.

IT IS FURTHER ORDERED that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#8) is **DENIED**.  The Clerk of the Court shall enter judgment accordingly.

DATED this 25th day of March, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

-11-